FILED

2006 Feb-09  PM 02:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **ISMAIL HAKIM MALIK SHABAZZ,** ) | |
| **formerly SPENCER HATCHER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **7:01-cv-00682-VEH-JEO** |
| ) | |
| **WARDEN JOHN E. NAGLE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Ismail

Hakim Malik Shabazz, formerly Spencer Hatcher, alleges that his constitutional rights were

violated while he was incarcerated at the Bibb County Correctional Facility in Brent, Alabama.

The plaintiff is presently incarcerated at the Bullock Correctional Facility in Union Springs,

Alabama.  The *pro se* complaint was filed on March 16, 2001, naming as defendants Warden

John E. Nagle, Warden Cheryl Price, Commissioner Donal Campbell,[1] Officer Charles Wheeler,

Officer Brian Harlan, and Sergeant Golden.  The plaintiff seeks monetary damages and a refund

of monies paid to the Alabama Department of Corrections.  In accordance with the usual

practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned

magistrate judge for a preliminary review and recommendation.  *See McCarthy v. Bronson*, 500

U.S. 136 (1991).

---

[1]The court notes that although the plaintiff originally named former Commissioner Michael
Haley as a defendant in this action, he was allowed to substitute Commissioner Donal Campbell
upon his appointment as Commissioner of the Alabama Department of Corrections.  (See Doc. 36).

On December 14, 2001, the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report responding to the factual allegations of the complaint. On February 21, 2002, defendants Nagle, Price, Campbell, Wheeler, and Golden filed their special report attaching documents and the affidavits of defendants Nagle, Price, Wheeler, and Golden, and the affidavit of former Commissioner Michael Haley.  The plaintiff filed a response on March 4, 2002.  By Order of January 27, 2005, the parties were notified that the special report filed by the defendants would be construed as a motion for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc*., 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S.

2

317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d

923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action,

is able to show some evidence with respect to each element of his claim, all other issues of fact

become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert.*

*denied*, 498 U.S. 1103 (1991).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails
> to establish a prima facie case.  "In such a situation, there can be
> 'no genuine issue as to any material fact,' since a complete failure
> of proof concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial."  Thus, under
> such circumstances, the public official is entitled to judgment as a
> matter of law, because the plaintiff has failed to carry the burden of
> proof.  This rule facilitates the dismissal of factually unsupported
> claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to

be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff.  On

February 29, 2000, defendant Wheeler was working in the capacity of Backgate Officer at the

Bibb County Correctional Facility.  In that capacity, defendant Wheeler processed several

inmates as they arrived at the facility that day.  (Wheeler's Aff., p. 1).  During the course of

processing the individuals, defendant Wheeler retrieved urine samples from each.  This is

standard procedure for all new intakes.  (Wheeler's Aff., p. 1).  The plaintiff was one of the new

intakes.  Just prior to voiding, each inmate was identified by their institutional file.  (Wheeler's

Aff., p. 1).  Defendant Wheeler collected a urine sample from the plaintiff.  (Complaint, p. 1).  At

approximately 2:30 p.m., defendant Wheeler completed the process of retrieving the urine samples.  At approximately 2:50 p.m., defendant Wheeler transported the urine samples from the backgate area to the Institutional Drug Testing Lab located in the Health Care Unit.  (Wheeler's Aff., p. 1).  The samples and the chain of custody form were turned over to Officer Brian Harlan.  The specimen collected from the plaintiff tested positive for Cannabinoids.  (Price's Aff., p. 1; Wheeler's Aff., p. 1).  Since it was the plaintiff's first positive test result, a citation was initiated instead of a disciplinary.  (Price's Aff., p. 1).  On March 2, 2000, Officer Brian Harlan served the plaintiff with a behavior citation charging him with violating Rule # 90, Consumption or Use of, or Under the Influence of Alcohol or Other Intoxicants.  (Complaint, p. 1).  The plaintiff wrote defendants Nagle and Price regarding the issue and requested that he be tested a second time.  (Complaint, p. 1).  On March 2 or 3, 2000, defendant Price approved the citation and the sanctions ignoring the plaintiff's request for a second test.  (Complaint, p. 1; Price's Aff., p. 1).  On March 13, 2000, $25.00 was deducted from the plaintiff's account.  (Complaint, p. 1).  The plaintiff wrote Commissioner Haley regarding the money, but he received no response.

The plaintiff filed a petition for writ of habeas corpus in the Circuit Court of Bibb County, Alabama, alleging that the defendants had violated his right to due process and their own administrative regulations.  (Complaint, p. 1).  The petition was assigned case number CV-00-33.  The defendants filed a Motion to Dismiss in which they denied that they had violated the plaintiff's rights.  (Complaint, p. 1).  The plaintiff was transferred from Bibb County Correctional Facility to Staton Correctional Facility on September 20, 2000.  (Golden's Aff., p. 2).  According to the plaintiff, on October 12, 2000, the court granted the defendants' motion, but ordered that they return the plaintiff's money.  (Complaint, p. 1).  On October 20, 2000,

4

defendant Wheeler wrote the plaintiff a disciplinary for violating Rule # 90, Consumption or Use

of, or Under the Influence of Alcohol or Other Intoxicants.  (Wheeler's Aff., p. 1).

On October 23, 2000, the defendants served the plaintiff with a disciplinary charging him

with violating Rule # 90.  (Complaint, p. 1).  On October 26, 2000, defendant Wheeler attended a

disciplinary hearing on the charge as the arresting officer.  The hearing was chaired by defendant

Golden.  (Wheeler's Aff., p. 1; Golden's Aff., p. 2).  During the hearing, defendant Wheeler gave

his sworn testimony.  After hearing the testimony of defendant Wheeler, seeing the results of the

drug test, hearing a written statement read by the plaintiff, and asking questions presented by the

plaintiff to be asked of the arresting officer, defendant Golden deliberated, made his findings of

fact, and came to the decision that the plaintiff was guilty as charged.  (Complaint, p. 1;

Wheeler's Aff., p. 1; Golden's Aff., p. 2).  Defendant Golden recommended twenty (20) days

extra duty under the supervision of Staton's second shift.  (Complaint, p. 1; Golden's Aff., p. 2).

On November 14, 2000, the plaintiff gave written notice of appeal.  The defendants then served

the plaintiff with a supplemental response to the court wherein they alleged that the original

citation had been removed from the plaintiff's file and that any due process problems had been

cured with the disciplinary.  (Complaint, p. 1).  When the record on appeal was complete, it was

discovered that the defendants had not sent the supplemental response to the court.  (Complaint,

p. 1).  The issue was before Alabama Court of Criminal Appeals, case number CR-00-0708,

when the defendants' attorney admitted that the plaintiff's money should have been refunded.

(Complaint, pp. 1 & 2).

From March 21, 1997, until the date this action was filed, the plaintiff also was charged

$3.00 as a medical co-payment.  (Complaint, p. 2).  By the time this action was filed, the

defendants had taken a total of $54.00 from the plaintiff's account for medical co-payments and had a $9.00 hold on his account.

## DISCUSSION

### Official Capacity Claims

The plaintiff sued the defendants in their official capacities; however, they are employees of the State of Alabama and cannot be held liable in damages, in their official capacities, for their own acts or those of their employees because they enjoy Eleventh Amendment immunity. Such officers are entitled to dismissal of any claims for damages brought against them in their official capacities as state officials. The United States Supreme Court has stated:

> [T]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S. Ct. 347, 89 L. Ed. 2d 389 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292, 58 S. Ct. 185, 82 L. Ed. 2d 269 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). To the extent they are sued in their official capacities, the suit against the defendants is a suit against the state. There has been no consent or waiver in this action; thus, the defendants, in their official capacities, are absolutely immune from damages liability in this action.

### Individual Capacity Claims

A test performed on the plaintiff's urine yielded a positive result for Cannabinoids. The plaintiff was given a behavior citation charging him with violating Rule # 90, Consumption or

Use of, or Under the Influence of Alcohol or Other Intoxicants.  Defendant Price approved the

citation and $25.00 was taken from the plaintiff's account as a result.  The plaintiff filed a

Petition for Writ of Habeas Corpus in the Bibb County Circuit Court alleging that the defendants

had violated his right to due process and their own administrative regulations.  The defendants

filed a Motion to Dismiss.  The court gave the defendants thirty (30) days within which to

respond to the plaintiff's claim regarding the $25.00 assessment against the plaintiff for the drug

test and ordered that if no response was filed, the defendants were to refund the money to the

plaintiff.  The court granted the defendants' motion with respect to all other matters raised in the

plaintiff's petition.  (Doc. Labeled "47" Attached to Plaint.'s Resp. in Opp. to the Defs.' Spec.

Rpt.).  The defendants did not refund the plaintiff's money.  The defendants vacated the behavior

citation and wrote the plaintiff a disciplinary charging him with the same offense.  The plaintiff

was found guilty of the disciplinary violation.

### Claims Involving the Behavior Citation

The plaintiff raises several claims in connection with this incident.  The plaintiff claims

first that he was denied due process in connection with the behavior citation.  In *Wolff v.

McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), the United States Supreme

Court established minimal due process requirements for disciplinary proceedings resulting in the

loss of good time credits.  The Supreme Court in *Wolff*, however, made a clear distinction

between sanctions such as loss of good time normally imposed for major acts of misconduct and

a lesser penalty, such as loss of privileges.  Therein the Court stated "We do not suggest,

however, that the procedures required by today's decision for the deprivation of good time would

also be required for the imposition of lesser penalties such as the loss of privileges." 418 U.S. at 571 n.19.

In the instant case, the plaintiff first received a behavior citation. A behavior citation is used instead of a disciplinary report on offenses where the arresting officer wishes only privileges to be taken for a rule violation. In this case, the defendants stated that since this was the plaintiff's first positive drug test, a behavior citation was issued instead of a disciplinary. In accord with Department of Corrections' policies, there was no possibility that the plaintiff would suffer loss of good time as a result of the behavior citation. Therefore, the plaintiff was not entitled to the procedural due process requirements set forth in *Wolff v. McDonnell*. Accordingly, the defendants are entitled to summary judgment on the plaintiff's claim that he was denied due process in connection with the behavior citation.

The plaintiff claims further that although the defendants stated that they vacated the behavior citation, it still appears on his record. In support of his claim, the plaintiff submits as Exhibit C attached to his response to the defendants special report (doc. 24), his inmate summary sheet dated November 2, 2001. Title 42, United States Code § 1983, provides that if an individual has been deprived of a right guaranteed to him by the Constitution or laws of the United States under color of state law, such an individual has a right to seek appropriate relief in a United States district court. The threshold question is whether the plaintiff was deprived of a right guaranteed by the Constitution. The plaintiff has failed to state how the failure to remove the vacated behavior citation from his record violated his constitutional rights. He does not allege that the presence of the vacated behavior citation on his record has harmed him in any way. Therefore, the defendants are entitled to summary judgment on this claim.

8

**Claims Involving the Disciplinary**

The plaintiff also claims that he was denied due process in connection with the disciplinary which was subsequently issued against him.  It is undisputed that defendant Golden found the plaintiff guilty of violating Rule # 90, specifically Consumption or Use of, or Under the Influence of Alcohol or Other Intoxicants, following a disciplinary hearing held on October 26, 2000.  It is further undisputed that defendant Golden sentenced the plaintiff to twenty (20) days extra duty under the supervision of the Staton second shift.  The plaintiff was not sentenced to the loss of any good time.  Defendant Golden states in his sworn affidavit that the plaintiff was found guilty based on the testimony of defendant Wheeler, the results of the drug test, a written statement read by the plaintiff, and the answers to questions presented by the plaintiff to the arresting officer.

The United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), changed the landscape in the analysis of this type of case. Dealing with a case in which a prisoner in Hawaii sued prison officials under § 1983 alleging that he had been denied due process of law before being confined to disciplinary segregation for 30 days, the court concluded that segregation as a form of punishment was not a "dramatic departure" from the ordinary conditions of incarceration.  As such, segregation did not amount to a grievous loss of a "substantive" interest protected by the Due Process Clause.  Unlike the loss of good-time credits at issue in *Wolff*, 418 U.S. 539, mere disciplinary segregation is the type of punishment an incarcerated individual should expect, and one that ordinarily is not a major change in his living conditions.  In concluding that placement in disciplinary segregation does not implicate due process, the Court held:

> We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in Wolff.  The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Sandin*, at 115 S. Ct. 2302.

With the Court's decision in *Sandin*, no longer does the prospect of extra duty alone mandate the due-process procedures defined in *Wolff*.  Being required to perform extra duty is not a "dramatic departure" from the ordinary conditions of confinement nor is it a "major disruption in [prisoners'] environment."  Thus, under the authority of *Sandin*, prisoners sentenced to extra duty have no protected interest requiring the due-process protections outlined in *Wolff*.  Because there is no right to procedural due process of law before the imposition of extra duty, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

While before *Sandin*, the plaintiff's assertion that he was sentenced to extra duty may have sufficiently stated a due process claim under § 1983, *see, e.g., Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir. 1982); *Hensley v. Wilson*, 850 F.2d 269 (6th Cir. 1988), it no longer does so.  There is no right to due process before a prisoner is sentenced to extra duty.

Moreover, the fact that the plaintiff was also punished by the prohibition against earning CIT (Correctional Incentive Time) does not change the analysis.  Unlike *Wolff* where accrued good-time credits were revoked or forfeited, the plaintiff in this case was merely precluded from earning CIT credit in the future; no accrued credits were taken from him.  While good-time

credits already earned constitute a liberty interest protected by the Due Process Clause, courts have held repeatedly that prisoners have no protectible expectation of continuing to receive good-time credits in the future. *Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991). Plainly, the Alabama Correctional Incentive Time Act, ALABAMA CODE § 14-9-40, *et seq.*, provides for the discretionary award of CIT credits, not a right for prisoners to earn CIT. The ability to earn future credits can be stopped at any time for any reason. Thus, insofar as the plaintiff was prohibited from earning future CIT (as distinct from forfeiting CIT credits already earned), no protectible liberty interest was involved and due process was not implicated. The defendants are entitled to summary judgment on this claim.

Alternatively, in *Wolff*, the Supreme Court set forth the following minimum due process requirements to be accorded prisoners facing disciplinary proceedings that could result in the loss of good time credits or in disciplinary segregation: (1) "written notice of the charges must be given" to the inmate at least 24-hours in advance of the proceeding; (2) the inmate "should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) the inmate must be given "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 564-66. It is clear that these requirements were met in this case. It is undisputed that the plaintiff was given advance notice of the charges. The plaintiff was served with a copy of the disciplinary on October 23, 2000, and the hearing was held on October 26, 2000. The evidence shows that the plaintiff was permitted to testify and to call witnesses at the hearing. (Golden's Aff., Disciplinary Rpt.). On the disciplinary report, it was noted that the plaintiff's witnesses were not available to testify because

11

they were not housed at Staton Correctional Facility.  The evidence shows, however, that the plaintiff did in fact present questions to defendant Wheeler which were answered during the hearing.  (Golden's Aff., Disciplinary Rpt.).  It is undisputed that the plaintiff was given a written statement setting forth the evidence relied on and the reasons for the disciplinary action on November 4, 2000.

As noted, "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board."  *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985).  During the hearing, defendant Wheeler testified that on February 29, 2000, at approximately 2:30 p.m., he collected a urine specimen from the plaintiff.  He testified further that he turned the specimen over to Officer Harlan for testing.  It is undisputed that defendant Golden had the results of the drug test before him to review during the hearing.  It is undisputed that according to the results of the drug test, the plaintiff's urine tested positive for Cannabinoids.  This is clearly "some evidence" supporting the hearing officer's finding that the plaintiff was guilty of Consumption or Use of, or Under the Influence of Alcohol or Other Intoxicants.  The evidence shows that the plaintiff was afforded due process during this hearing. The defendants are entitled to summary judgment with respect to the plaintiff's claim that he was denied due process in connection with the disciplinary.

The plaintiff also claims that his constitutional rights were violated when the defendants failed to refund the $25.00 assessment which was taken from his prison account after his urine tested positive for Cannabinoids.  In connection with a petition for writ of habeas corpus filed by the plaintiff in the Bibb County Circuit Court, the court ordered the defendants to either refund the plaintiff's money or file a response to his claims.  The plaintiff claims that the defendants

12

failed to respond to the court's Order and failed to refund his money.  To the contrary, the

defendants have submitted as Exhibit 6 attached to their special report, a document entitled

Supplemental Response which they contend was filed by them in the Bibb County Circuit Court

on November 16, 2000, in response to the court's Order.  Further in support of the defendants

contention that they filed a response to the court's Order, the defendants have submitted as

Exhibit 6A attached to their special report, a Memorandum filed by the Alabama Court of

Criminal Appeals in connection with the petition for writ of habeas corpus filed by the plaintiff.

In the Memorandum, the Court of Criminal Appeals noted that the record contains a

Supplemental Response served by the Department of Corrections on November 16, 2000.

According to the record of the Alabama Court of Criminal Appeals, the defendants did file a

response to the court's Order as directed.  It is noted that the Bibb County Circuit Court ordered

that the defendants either respond to the court's Order or refund the $25.00 assessment.  The

evidence establishes that the defendants did respond to the Order and there is no record of any

court entering a second Order requiring the defendants to refund the $25.00 assessment after the

defendants responded as directed by the court.  Accordingly, the defendants are entitled to

summary judgment on this claim.

## Violation of Administrative Regulations

The plaintiff also alleged that the actions of the defendants violated their own

administrative regulations.  However, the mere fact that agency regulations have been violated

does not by itself raise a constitutional issue.  *United States v. Caceres*, 440 U.S. 741, 99 S. Ct.

1465, 59 L. Ed. 2d 733 (1979); *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir. 1982), *cert. denied*,

459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F. Supp. 836, 838 (E.D. Va. 1981).  The

defendants are entitled to summary judgment on the plaintiff's claim that their actions violated their own administrative regulations.

### Due Process Claim Involving Medical Co-Payments Claims
### from March 21, 1997, through March 14, 1999

The plaintiff next claims that the defendants have violated his right to due process by taking $3.00 medical co-payments from his account beginning March 21, 1997.  It is noted at the outset that any claims brought by the plaintiff against the defendants which occurred prior to March 15, 1999, are clearly barred by the statute of limitations.  Therefore, the court will not consider the plaintiff's claims for the period beginning March 21, 1997, through March 14, 1999. In *Owens v. Okure*, 488 U.S. 235, 236, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989), the United States Supreme Court held that the proper statute of limitations for a § 1983 action is the forum state's general or residual statute of limitations for personal injury actions.  The residual statute of limitations in Alabama is two years.  ALA. CODE § 6-2-38(l).[2]  Therefore, only the claims which occurred within the two years prior to the filing of this action will be considered. The plaintiff filed this action on March 15, 2001.[3]

---

[2]Section 6-2-38(l), ALA. CODE, provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

[3]Because prisoners proceeding *pro se* have virtually no control over the mailing of their pleadings, their pleadings are deemed to be filed at the time the prisoner delivers the pleading to prison or jail officials to be mailed.  *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988).  Although the record contains no information regarding the date the plaintiff gave his complaint to prisoner officials to mail, he signed his complaint on March 15, 2001.  The court will therefore deem the plaintiff's complaint to have been filed on March 15, 2001.  (The complaint was received by this court on March 16, 2001.)

14

In determining whether a complaint is frivolous under 28 U.S.C. § 1915A(b), a district court can consider, *sua sponte*, affirmative defenses that are apparent from the record in order to end "litigation where the plaintiff has no basis on which to succeed." *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990). *See also Allen v. Kemp,* 875 F.2d 861 (6th Cir. 1989); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983). It is apparent from the face of the instant complaint that the plaintiff's claims against the defendants for the period beginning March 21, 1997, through March 14, 1999, are barred by the statute of limitations.[4]  The claims against these defendants for that period are therefore frivolous. In addition, a claim that is barred by the statute of limitations fails to state a claim upon which relief can be granted. *Johnson v. Hill*, 965 F. Supp. 1487, 1489 (E.D. Va. 1997). Thus, the defendants are entitled to summary judgment with respect to the plaintiff's claim that the defendants violated the plaintiff's right to due process by deducting $3.00 co-payments for medical treatment from his account from March 21, 1997, through March 14, 1999.

---

[4]Prior to May 1996, the Alabama tolling provision, ALA. CODE § 6-2-8 (1975), provided in pertinent part:

> If anyone entitled to commence any of the actions enumerated in this chapter ... is, at the time such right accrues, ... <u>imprisoned on a criminal charge for any term less than for life</u>, he shall have three years, or the period allowed by law for the commencement of such action if it be less than three years, after the termination of such disability to commence an action ... provided, however, that no disability shall extend the period of limitations so as to allow such action to be commenced ... after the lapse of 20 years from the time the claim or right accrued.

(Emphasis added.) Effective May 17, 1996, § 6-2-8 was amended so that it no longer provides a tolling provision for those "imprisoned on a criminal charge for any term less than for life." In any event, this plaintiff is imprisoned for life. Consequently, his action would not have been saved by the tolling provision, even had the tolling provision not been amended.

### Claims from March 15, 1999, through March 15, 2001

The plaintiff's final claim is that the defendants have violated his right to due process by charging him $3.00 for a medical co-payment fee. As noted, the court is only considering claims from March 15, 1999, through March 15, 2001. Alabama Department of Corrections Administrative Regulation Number 601, Inmate Co-Payment For Health Care, provides that it is the policy of the Department of Corrections that an inmate will be charged a co-payment of three dollars ($3.00) for any self-initiated medical, dental, mental health, or optometrist visits. According to the regulation, an inmate will not be charged a co-payment if he/she qualifies for a waiver under certain criteria set forth elsewhere in the regulation. Administrative Regulation 601 makes it clear in Paragraph I that inmates have a constitutionally guaranteed right to health care services necessary for the treatment of serious medical conditions and in Paragraph II that no inmate will be refused medical services because they do not have any funds in their PMOD account. The plaintiff does not allege that he has been denied medical services because he did not have any money in his prisoner account or even that he was provided treatment only after he paid. As noted, the plaintiff claims that his due process rights were violated because money for the co-payments was taken from his account without him first receiving due process. Although the Supreme Court has held that a state must provide inmates with basic medical care, the Court has not tackled the question whether that care must be provided free of charge. Cf. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 245 n.7, 103 S. Ct. 2979, 2984 n.7, 77 L. Ed. 2d 605 (1983) ("Nothing we say here affects any right a hospital or government entity may have to recover from a detainee the cost of medical services provided to him."). There is nothing unconstitutional about a regulation which requires that inmates with adequate resources pay a

16

small portion of their medical care.  Instead, such a regulation simply represents an insistence

that the prisoner bear a personal expense that he or she can meet and would be required to meet

in the outside world.

The plaintiff does have a protected property interest in his money.  However, the

co-payments were deducted from the plaintiff's account in exchange for medical services.  In

*Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981) (per curiam), the court held that there was

no basis for a due process claim where deductions from prisoner accounts for postage were

"assessment[s] for value received" and the plaintiffs did not contend that they did not receive the

services for which they were charged.  Similarly, the plaintiff in this action does not allege that

he did not receive the medical services for which he was charged.

In this case, the "process due," if any, is truly minimal.  Under the co-payment policy,

deductions are made from inmates' accounts quite simply because they have purchased

something on their own initiative.  It is clear from the evidence presented in this action that

inmates have been informed about the co-payment policy, that the policy requires documentation

of eligible medical treatment, and that inmates are required to sign an "Inmate Medical Co-Pay

Withdrawal Notice" form when there is a medical visit to which the co-pay requirement applies.

*See Scott v. Angelone*, 771 F. Supp. 1064, 1067-68 (D.Nev. 1991) (inmate was not denied due

process of law when his account was charged for medical visits because he had prior notice of

the policy, authorized the charges, and was reimbursed for erroneous charges), *aff'd*, 980 F.2d

738 (9th Cir. 1992).  The procedures in the instant case pass constitutional muster, and a

pre-deprivation hearing is not required.  *See id*.  It is clear that the defendants' co-payment policy

does not on its face deprive the plaintiff of any protected interest that he may have without due process of law.  The defendants are entitled to summary judgment on this claim.

**Emotional Distress**

As part of the relief sought, the plaintiff seeks monetary damages for emotional distress caused when he received the Behavior Citation and the subsequent disciplinary, because until the time he received the Behavior Citation, he had maintained a clear record for six years and two months.  Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), a prisoner may not bring a claim for mental or emotional injuries suffered while in custody absent a prior showing of physical injury.  In order to satisfy section 1997e(e) the physical injury must be more than *de minimis*, but need not be significant.[5]  To establish liability under § 1983, the plaintiff must show that (1) he suffered an actual injury, (2) the injury resulted from a constitutional violation, and (3) that these defendants were responsible for that constitutional violation.  *See, e.g., Collins v. City of Harker Heights*, 503 U.S. 115, 120-21, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992).  The plaintiff has failed to meet these requirements.  The plaintiff has not shown that he suffered an actual physical injury.  The defendants are entitled to summary judgment on the plaintiff's claim for monetary damages for emotional distress.

---

[5] *Harris*, 190 F.3d 1279, was vacated by 197 F.3d 1059, and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir. 2000), *cert. denied*, 532 U.S. 1065, 121 S. Ct. 2214, 150 L. Ed. 2d 208 (2001).  The part of the panel opinion relevant to this issue was reinstated.

**CONCLUSION**

Accordingly, for the reasons stated above the defendants' special report shall be treated as a motion for summary judgment and, as such, is due to be granted and all of the plaintiff's claims dismissed with prejudice.[6]

**DATED**, this the 9th day of February, 2006.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[6]This action is also due to be dismissed as to Harlan for a lack of service.

The plaintiff was advised that the court's Order for Special Report mailed to Harlan had been returned to the court with the notation "Moved Left No Address." The plaintiff was directed to supply the court with a correct service address for this defendant and was notified that failure to provide the address would result in the dismissal of Harlan from this action.

The plaintiff filed a response to the court's Order and the defendants' counsel was ordered to provide the court with the last known address of Harlan so that the court documents could be sent to him.

The defendants responded to the court's Order. Harlan was ordered to file an answer responding to the allegations the plaintiff made against him in his complaint. The mailing that was sent to Harlan was returned to the court as undeliverable.

Due to the failure to serve Harlan, the claims in this action against him are also due to be dismissed for that reason.

19